1

2

3      **UNITED STATES DISTRICT COURT**

4      **NORTHERN DISTRICT OF CALIFORNIA**

5      **SAN JOSE DIVISION**

6

7      MICHAEL NORRIS,                        Case No.  5:24-cv-09196-BLF

8                    Plaintiff,              **ORDER GRANTING PLAINTIFF'S**
                                             **MOTION FOR SUMMARY**
9             v.                             **JUDGMENT**

10     FRANK BISIGNANO, Commissioner of      [Re:  ECF No. 16, 18, 23]
       Social Security,
11
                      Defendant.
12

13

14          Plaintiff Michael Norris ("Norris") appeals a final decision of Defendant Commissioner of

15     Social Security Administration ("Commissioner") denying his application for Title XVI

16     supplemental security income ("SSI"). ECF 1. Norris filed a motion for summary judgment. *See*

17     ECF 16 ("Mot."). In his motion, Norris asks the Court to reverse the Commissioner's decision and

18     remand for payment of benefits or, alternatively, to remand for further administrative proceedings.

19     *Id.* at 25. The Commissioner filed an opposition. *See* ECF 18 ("Opp."). Norris filed a reply. *See* ECF

20     23 ("Reply").

21          For the reasons discussed below, the Court GRANTS Norris's motion. The Court hereby

22     VACATES the Commissioner's decision denying benefits and REMANDS this action for further

23     administrative proceedings.

24     **I.      BACKGROUND**

25          Norris was born on November 6, 1992, and was twenty-eight at the time of his alleged onset

26     date. Administrative Record ("AR") 17, 97. Norris graduated from high school from a continuation

27     school. AR 2135. Norris has no relevant past work. AR 26. On September 27, 2021, Norris filed his

28     Title XVI application for supplemental security income ("SSI") benefits. AR 17. He claimed

       disability beginning on July 16, 2021, due to a combination of impairments including unspecified

depressive disorder, unspecified anxiety disorder, schizophrenia, PTSD, alcohol use disorder, and polysubstance abuse. AR 20, 37-38, 64. Norris claimed that he had not engaged in substantial gainful activity since July 16, 2021. AR 20.

Norris's application was initially denied on May 27, 2022, and was again denied on reconsideration on November 9, 2022. AR 62-96. On April 2, 2024, an Administrative Law Judge ("ALJ") held a hearing, at which Norris and a vocational expert testified. AR 33.

The ALJ issued an unfavorable decision on July 26, 2024. AR 14. The ALJ found that Norris was under a disability, but Norris's substance use disorder was a contributing factor material to the determination of disability. AR 18. Accordingly, the ALJ found that Norris was not disabled under the Social Security Act and denied benefits. AR 18. On November 5, 2024, the Appeals Council denied Norris's request to review the ALJ's decision. AR 1. On December 18, 2024, Norris sought review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). *See* ECF 1.

## II.    LEGAL STANDARD

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), district courts have the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony,

United States District Court
Northern District of California

and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

### B.  Standard for Determining Disability

A claimant seeking SSI under Title XVI must establish disability between the date of the application for benefits and the date of the ALJ's decision. *Deckard*, 2020 WL 1157026, at *2; *see Sophie Jean P. v. Comm'r of Soc. Sec.*, 2019 WL 6749415, at *2 (D. Or. Dec. 11, 2019).

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### C.  Drug Addiction and Alcoholism ("DAA") Analysis

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In cases involving DAA, an ALJ must apply the five-step sequential disability analysis twice. *See* Social Security Ruling 13-2p.; Titles II and XVI: Evaluating

United States District Court
Northern District of California

Cases Involving Drug Addiction and Alcoholism (DAA), 2013 WL 621536, at *6 (Feb. 20, 2013) ("SSR 13-2p"); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

At first stage of the DAA analysis, the ALJ conducts the five-step sequential analysis and determines whether the claimant is disabled based on all of the claimant's medically determinable impairments, including DAA. *Bustamante*, 262 F.3d at 955; SSR 13-2p, 2013 WL 621536, at *6. If the ALJ determines that the claimant's impairments, including DAA, are not disabling, then the inquiry ends. *Bustamante*, 262 F.3d at 955; SSR 13-2p, 2013 WL 621536, at *5-6. If the ALJ finds that the claimant is disabled and there is medical evidence of DAA, the ALJ proceeds to the second stage of the DAA analysis.

At the second stage, the ALJ applies the five-step sequential inquiry a second time to determine whether DAA is "material" to the disability determination. SSR 13-2p, 2013 WL 621536, at *4. " 'Materiality' is the degree to which an individual would still be found disabled if they stopped using drugs or alcohol." *Jessie L. v. Kijakazi*, No. 20-cv-09305-DMR, 2022 WL 2222964, at *2 (N.D. Cal. June 21, 2022); 20 C.F.R. § 416.935(b). At this stage, the ALJ "evaluate[s] which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's "remaining limitations are disabling . . . independent of [the claimant's] drug addiction or alcoholism," then the ALJ "will find [DAA] is not a contributing factor material to the determination of disability," and the claimant is deemed disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). By contrast, if, absent the DAA, the claimant's "remaining limitations would not be disabling," the ALJ will determine that DAA "is a contributing factor material to the determination of disability," and will find the claimant not disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

"[W]hen evidence exists of a claimant's drug or alcohol abuse, the claimant bears the burden of proving that his substance abuse is not a material contributing factor to his disability." *Parra v. Astrue*, 481 F.3d 742, 744-745 (9th Cir. 2007); *see also id.* at 748. Unlike physical impairments, the SSA has indicated that there is no research data that can reliably predict how a mental disorder will

be affected if DAA ceases and, accordingly, does not permit adjudicators to "rely exclusively on medical expertise and the nature of a claimant's mental disorder" in finding DAA is material. SSR 13-2p, 2013 WL 621536, at *9. "All adjudicators must provide sufficient information in their determination or decision that explains the rationale supporting their determination of the materiality of DAA so that a subsequent reviewer considering all of the evidence in the case record is able to understand the basis for the materiality finding and the determination of whether the claimant is disabled." SSR 13-2p, 2013 WL 621536, at *2.

## III.    DISCUSSION

The Court first summarizes the ALJ's decision denying benefits. The Court then addresses Norris's challenges to the ALJ's decision and the Commissioner's response thereto.

### A.  ALJ's Determinations

The ALJ determined that Norris was under a disability, but Norris's substance use disorder was a contributing factor material to the determination of disability. AR 18. Therefore, the ALJ found that Norris was not disabled under the Social Security Act at any time from the amended alleged onset date through the date of the decision. AR 18.

At step one, the ALJ determined that Norris had not engaged in substantial gainful activity since the alleged onset date, July 16, 2021. AR 20.

At step two, the ALJ found that Norris had the following severe impairments: unspecified depressive disorder; unspecified anxiety disorder; schizophrenia; PTSD; alcohol use disorder; and polysubstance use disorder. AR 20.

At step three, the ALJ found that including substance use, the severity of Norris's impairments met the criteria of section 12.03 of 20 CFR Part 404, Subpart P, Appendix 1. AR 20. In doing so, the ALJ followed a two-step process: first, the ALJ determined whether there was an underlying medically determinable physical or mental impairment; and, second, the ALJ evaluated the intensity, persistence, and limiting effects of Norris's symptoms to determine the extent to which they limited Norris's ability to function. AR 20. The ALJ found that the Paragraph A criteria were satisfied because the Norris had "hallucinations, disorganized thinking (speech), and grossly disorganized behavior." AR 20. The ALJ also found that the Paragraph B criteria were satisfied

United States District Court
Northern District of California

1    because Norris's impairments "caused a mild limitation in understanding, remembering, or applying

2    information, a marked limitation in interacting with others, a marked limitation in concentrating,

3    persisting, or maintaining pace, and a marked limitation in adapting or managing oneself." AR 20.

4         As required in cases involving DAA, the ALJ conducted a second sequential analysis at step

5    three and found that if Norris stopped substance use, Norris would not have an impairment that met

6    or medically equaled the severity of one of the impairments listed in 20 CFR 416.994(b)(5)(i). AR

7    21. The ALJ determined that, if Norris stopped the substance use, his mental impairments would

8    not satisfy the Paragraph B criteria. AR 22. Specifically, the ALJ evaluated the evidence in the light

9    most favorable to Norris and found that, when Norris was clean and sober, there were no reported

10   incidents or difficulty that would meet or cause at least two marked limitations or one extreme

11   limitations in the areas of: (1) understanding, remembering, or applying information; (2) interacting

12   with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing

13   oneself. AR 21-22. The ALJ also found that the evidence failed to show the presence of the

14   Paragraph C criteria when Norris stopped substance use. AR 22.

15        Before considering step four, the ALJ found that if Norris stopped substance use, Norris

16   would have the residual functional capacity to perform a full range of work at all exertional levels

17   with the nonexertional limitations of performing simple routine tasks. AR 22. The ALJ also found

18   that Norris was able to work independently. AR 22. The ALJ found that Norris's medically

19   determinable impairments could reasonably be expected to produce the alleged symptoms, but the

20   intensity, persistence, and limiting effects of these symptoms were inconsistent with other evidence

21   in the record. AR 23. The ALJ found that the medical evidence showed Norris's mental symptoms

22   were exacerbated by polysubstance abuse, but the mental symptoms were "greatly diminished"

23   when he was clean and sober. AR 23.

24        At step four, the ALJ found that Norris had the residual functional capacity to perform past

25   relevant work. AR 25.

26        At step five, the ALJ considered Norris's age, education, work experience, and residual

27   functional capacity and found that there had been jobs that exist in significant numbers in the

28   national economy that Norris could perform. AR 26. The ALJ noted that if Norris stopped substance

use, his ability to work at all exertional levels had been compromised by nonexertional limitations. AR 26. Nonetheless, the ALJ credited a vocational expert's testimony and found that, if Norris stopped substance use, Norris would be able to perform requirements of occupations such as cleaner, routing clerk, and compression molding machine tender. AR 26. Accordingly, the ALJ found that Norris was not disabled within the meaning of the Social Security Act because the substance use disorder was a contributing factor material to the determination of disability. AR 26.

**B. Norris's Challenges to the ALJ's Determinations**

The parties do not dispute the ALJ's determinations at step one and step two. *See generally* Mot.; Opp. The parties also do not dispute the ALJ's first sequential analysis finding Norris disabled at step three when substance use was included. The parties dispute the ALJ's finding at step three of the second sequential analysis where the ALJ found that Norris's impairments would no longer meet listing 12.03 absent substance use and that Norris's substance use was material to his impairment. *See generally* Mot.; Opp.

Norris argues that the ALJ's determinations should be reversed for five reasons. Mot. at 1. First, Norris argues that the ALJ's finding that substance use is material to Norris's disability is not based on substantial evidence. *Id.* at 4-16. Second, Norris argues that the ALJ erred in substituting his own lay opinion in place of the opinions of Norris's medical providers. *Id.* at 16-17. Third, Norris argues that the ALJ failed to articulate factors of supportability and consistency when evaluating the medical opinion evidence. *Id.* at 17-22. Fourth, Norris argues that the ALJ's "Paragraph C" findings are not based on substantial evidence. *Id.* at 22-23. Fifth, Norris argues that the ALJ erred in determining that Norris's statements concerning the intensity, persistence, and limiting effects of his symptoms are not consistent with the medical evidence. *Id.* at 23-24.

In response, the Commissioner argues that the ALJ's decision should be affirmed. Opp. at 15. The Commissioner argues that the ALJ reasonably determined that DAA was material to Norris's disability, and that, without DAA, Norris's mental impairments improved and did not meet Listing 12.03. *Id.* at 2-7. Second, the Commissioner argues that the ALJ reasonably found that, absent DAA, Norris's symptom allegations were not all consistent with the evidence in the record. *Id.* at 8-11. Third, the Commissioner argues that the ALJ properly considered the supportability and

consistency factors in evaluating the medical opinion. *Id.* at 11-14. Finally, the Commissioner argues that substantial evidence supports the ALJ's residual functioning capacity finding. *Id.* at 14-15.

The Court addresses the parties' arguments in turn.

### 1. The ALJ's DAA Materiality Finding is Not Supported by Substantial Evidence.

Norris argues that substantial evidence in the record does not support the ALJ's finding that drug and alcohol addiction ("DAA") is material to Norris's disability. Mot. at 7-15. First, Norris argues that the ALJ improperly evaluated the severity of Norris's mental impairments without DAA by mistakenly relying on evidence when Norris was not sober. *Id.* at 7-8. Second, Norris argues that the ALJ overlooked evidence of severe functional impairments while Norris was sober. *Id.* at 8-10. Third, Norris argues that the ALJ erred in relying on mental status examinations ("MSE") because they are of limited evidentiary value. *Id.* at 10-11. Fourth, Norris argues that improvement in Norris's mental health symptoms in highly structured environments does not establish the materiality of DAA. *Id.* at 11-12. Fifth, Norris argues that the ALJ's finding that the Paragraph B criteria are not satisfied absent DAA are tenuous. *Id.* at 12. Sixth, Norris argues that his medical providers determined DAA was not material to his disability. *Id.* at 15.

The Commissioner argues that the ALJ reasonably determined that drug and alcohol addiction is material to Norris's disability. Opp. at 2-7. First, the Commissioner asserts that the ALJ properly applied the DAA analysis. *Id.* at 2-4. Second, the Commissioner asserts that the ALJ reasonably determined that without DAA, Norris's impairments did not meet Listing 12.03 of the Social Security Act because the ALJ's finding is supported by substantial evidence. *Id.* at 4-7.

#### a. The ALJ erred in analyzing evidence showing Norris had functional impairments while under a period of sobriety.

Norris argues that the ALJ failed to address evidence that showed Norris had functional impairments when he was under a period of sobriety. Mot. at 8-10. The Commissioner has not expressly responded to evidence pointed out by Norris. *See generally* Opp.; Reply at 1-2.

DAA is not material to the determination of disability if the claimant has other impairments that result in disability and DAA "is not causing or does not affect the other impairment(s) to the point where the other impairment(s) could be found nondisabling in the absence of DAA." SSR 13-

United States District Court
Northern District of California

2p, 2013 WL 621536 at *7.

Here, the ALJ found Norris "would not have an impairment" that meets the criteria of listings 12.03, 12.04, 12.06 and 12.15 if he stopped substance use. AR 21. The Court notes that the ALJ relied exclusively on evidence from Norris's incarceration and treatment at the CURA and excluded as not persuasive all opinions from Norris's medical providers. *See* AR 23 (citing AR 491, 1000-02); AR 24 (citing AR 1256-1417, 1503, 1534, 1539, 1561, 1571); AR 25. SSR 13-2p provides that "[i]mprovement in a co-occurring mental disorder in a highly structured treatment setting ... may be due ... to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use." 2013 WL 621536, at *12. "[A] record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention." *Id.* at *13. Here, as discussed further below, the ALJ erred in relying only on medical evidence from highly structured settings while finding all the medical opinions from Norris's providers unpersuasive. *See, e.g., Albert B. v. Kijakazi*, No. 5:22-CV-00865-EJD, 2023 WL 6462856, at *5 (N.D. Cal. Sept. 29, 2023) ("[A] mental disorder may still be disabling even when symptoms are reduced during times of structure and support."); *L.S. v. King*, No. 23-CV-02862-VKD, 2025 WL 588998, at *8 (N.D. Cal. Feb. 23, 2025) (finding "materiality is not shown where the evidence does not separate the effects of the structured environment and the purported sobriety."). On this basis alone, the Court finds that the ALJ failed to apply the standards provided under SSR 13-2p and his finding is unsupported by substantial evidence. *See* SSR 13-2p, 2013 WL 621536, at *13 (DAA materiality finding "need evidence from outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence.").

The Court also notes that the ALJ has failed to address incidents and reports from Norris's incarceration and treatment in medical facilities. For example, the ALJ considered Norris's admission to a 5250 hold from July 16, 2021, until August 13, 2021 as a period of sobriety and found medical evaluations from that period showed Norris's impairment improved absent substance use. AR 23 (citing AR 491, 1000-02). But the record shows that as of August 12, 2021, Norris's

thought process was "disorganized and illogical," his thought content was notable for bizarre and paranoid ideas, and he had poor insight and recent judgment. AR 806. The ALJ also found that the provider's report showed that Norris "[was] generally normal" during that time without addressing this evidence. AR 24 (citing AR 1470, 1480). But the record shows that on June 10, 2022, after being incarcerated at Santa Rita for one month, a medical provider reported that Norris "started feeling angry and hopeless," and that "[Norris] began tearing up books and was seen banging his head a couple times on the wall." AR 1471. The record further shows that on July 7, 2022, Norris reported increased anxiety, sad mood, mood swings, increased irritability, high energy level with poor sleep, nightmares, mind racing and increased restlessness. AR 1479. Furthermore, the ALJ found that providers' reports between 2022 and 2024 were generally normal when Norris was presumed to be sober and clean during periods of incarceration. AR 24 (citing AR 1503, 1534, 1539, 1561, 1571, AR 2205-30, 2231-74). However, the record shows that Norris displayed symptoms of anxiety and depressed mood during that period. *See* AR 1503, 1534, 1539, 1561-62, 1571, 1573, 2240, 2246, 2250, 2252-53, 2272). The Court finds that the ALJ has failed to address this evidence in his decision.

The Court is not persuaded by the Commissioner's argument that Norris's symptoms were largely controlled with antipsychotic medication. Opp. at 9-10 (citing AR 23, 491-92, 1000-01). Rather, the ALJ erred in picking out a few instances of improvement and treating them as basis for rejecting benefits. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.").

Accordingly, the Court finds that substantial evidence does not support the ALJ's finding that Norris's impairments improved during periods of sobriety.

### b. The ALJ's Evaluation of Norris's Mental Status Examinations

Norris argues that the ALJ erred in relying on mental status examinations because they "are of limited evidentiary value." Mot. at 10. Norris argues that the mental status examinations considered by the ALJ "were often at odds with the broader context of medical treatment that showed Plaintiff had functional impairments while inside jail." *Id.* at 11. In response, the Commissioner argues that the ALJ properly relied on the mental status examination performed

United States District Court
Northern District of California

1  during periods when Plaintiff was incarcerated that showed Norris was normal. Opp. at 5-6.

2  "It is error for an ALJ to pick out a few isolated instances of improvement over a period of

3  months . . . and to treat them as a basis for concluding a claimant is capable of working." *Garrison*,

4  759 F.3d at 1017; *see Jones v. Kijakazi*, No. 21-16950, 2022 WL 4285597, at *1–2 (9th Cir. 2022)

5  (holding that an ALJ failed to provide clear and convincing reasons where the ALJ

6  "mischaracterized the contents of a function report ... and a psychological evaluation"). A " 'normal'

7  designation of Plaintiff's 'mental status' is not only ambiguous but is also not dispositive of

8  Plaintiff's mental health as a whole . . . Plaintiff having a composed and 'normal' demeanor during

9  doctor visits does not preclude her from experiencing anxiety and depression in other contexts."

10  *Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017)

11  (internal citations and quotation marks omitted).

12  The Court finds that the ALJ relied heavily on parts of mental status examinations in which

13  a medical provider recorded Norris's mental status during his incarceration. *See* AR 22-25. As

14  discussed above, the ALJ's selective citations to these portions of the record mischaracterize the

15  medical record as a whole. Furthermore, even if Plaintiff were normal on the days he was examined

16  or treated by mental health professionals, this notation alone was insufficient reason to find his

17  impairments improved absent substance use. *Garrison*, 759 F.3d at 1017 ("Cycles of improvement

18  and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an

19  ALJ to pick out a few isolated instances of improvement over a period of months or years and to

20  treat them as a basis for concluding a claimant is capable of working.").

21  Accordingly, the Court finds the ALJ erred in making his finding based heavily on selected

22  mental status examinations in jail.

23  **c.  The ALJ failed to apply the standards provided under SSR 13-2p by relying**

24  **only on improvements in highly structured settings in his decision.**

25  Norris argues that the ALJ's materiality findings are not supported by substantial evidence

26  because "evidence of any improvement was attributable to treatment for his mental health symptoms

27  in a highly structured environment." Mot. at 12. In response, the Commissioner argues that the ALJ

28  was not barred from considering "reports from sobriety in the prison to evaluate a claimant's

1    functioning when absent DAA." Opp. at 7.

2        SSR 13-2p acknowledges that "[i]mprovement in a co-occurring mental disorder in a highly

3    structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due

4    at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation

5    of substance use." SSR 13-2p, 2013 WL 621536, at *12. Accordingly, the DAA materiality

6    determination requires "evidence from *outside of such highly structured treatment settings*

7    demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve,

8    with abstinence." *Id.* at *13 (emphasis added).

9        As acknowledged in the ALJ's decision, much of Norris's documented improvement

10   occurred when he was in a structured environment. For example, the ALJ found that, after being

11   placed on a 5250 hold for about a month in 2021 for acute psychosis due to polysubstance abuse,

12   Norris's condition at discharge was "improved, stable, with no suicidal ideation or acute psychotic

13   symptoms." AR 23 (citing AR 491, 1000-02). Additionally, the ALJ considered periods of

14   incarceration in 2022 and 2023 and found Norris's mental status examination conducted in jail

15   "were also generally normal." AR 24. The ALJ also based his decision on psychiatric evaluations

16   from Norris's treatment at the CURA residential treatment center in 2024. AR 24 (citing AR 2162,

17   2174, 2190, 2196).

18       Jails and hospitals are structured settings under the regulations. *See* SSR 13-2p, 2013 WL

19   621536, at *12; *Moore v. Colvin*, No. 5:12-CV-120-C, 2013 WL 3156505, at *5 (N.D. Tex. June

20   21, 2013) (finding "highly supportive living arrangements" include jail). While Norris presumably

21   was abstinent during his periods of incarceration and treatment at CURA and experienced some

22   improvements in his mental health symptoms during those periods, that evidence from "highly

23   structured settings" is insufficient to show that his improvements were results of "cessation of

24   substance use" under the regulation. SSR 13-2p, 2013 WL 621536, at *12. The Court notes that the

25   ALJ has failed to point to any "evidence from outside of" highly structured settings in making his

26   decision. *See* AR 23-25; SSR 13-2p, 2013 WL 621536, at *13. Accordingly, the ALJ erred in finding

27   that Norris's "mental symptoms are greatly diminished" absent substance use without first

28   considering whether those improvements were made only in structured settings and without

United States District Court
Northern District of California

considering evidence outside of structured settings. AR 23; *see Albert B.*, No. 5:22-CV-00865-EJD, 2023 WL 6462856, at \*5; *L.S.*, No. 23-CV-02862-VKD, 2025 WL 588998, at \*8; *Clark v. Berryhill*, No. 17-cv-00371-JCS, 2018 WL 3659052, at \*29 (N.D. Cal. Aug. 2, 2018) ("Intermittent improvement ... limited to structured settings is particularly suspect as evidence that a claimant can work outside of such settings.").

### d. The ALJ's finding that Norris does not meet Criteria B absent DAA is not supported by substantial evidence.

Norris argues that the ALJ's Paragraph B findings are not supported by substantial evidence. Mot. at 7, 12-15. Norris argues that the ALJ improperly relied on cherry-picked evidence in his Paragraph B decision that do not reasonably show Norris's overall mental health condition. *Id.* at 7 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207-1208 (9th Cir. 2001)).

In response, the Commissioner argues that the ALJ reasonably found that Norris's mental impairments did not cause extreme or marked limitations in the "B Criteria" and that his impairments therefore did not rise to Listings-level severity under 12.03(B). Opp. at 5-6.

If the ALJ finds a medically determinable mental impairment, the ALJ then must assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the claimant's ability to adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four factors are known as the "Paragraph B" criteria. *Id.*

Under Paragraph B criteria, a claimant's mental disorder renders him disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). By contrast, a claimant has an "extreme" limitation if he is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e)."

13

1    The Court addresses each functional area under Paragraph B criteria in turn.

### i.    Understanding, remembering and applying information

3    Norris argues that the ALJ erred in finding that Norris had a mild limitation in understanding,

4    remembering, or applying information irrespective of substance use. Mot. at 12-13. In response, the

5    Commissioner argues that the ALJ's finding is supported by substantial evidence. Opp. at 5.

6    As to this functional area, the ALJ found that Norris had a mild limitation when engaged in

7    substance use. AR 20 (citing 439-508, 1039-1190). The ALJ further found that there was little

8    evidence of any limitation from periods of incarceration and beginning in late 2023 when Norris

9    was clean and sober. AR 21. Consequently, the ALJ found that when Norris was not engaged in

10    substance use, he had a mild limitation in this area. AR 21.

11    The Court finds that the ALJ's finding that Norris would have a mild limitation in

12    understanding, remembering, and applying information irrespective of substance use is not

13    supported by substantial evidence. For example, on August 12, 2021, after Norris had been under a

14    5250 hold for one month, his thought process was still "disorganized and illogical." AR 806. The

15    ALJ has failed to address this evidence. Additionally, as discussed below, the ALJ erred in rejecting

16    the medical opinions from Norris's medical providers. AR 25. For example, Dr. Wiebe opined that

17    Norris had marked limitations in every category of mental abilities needed to do unskilled work

18    including understanding, remembering, and carrying out both "very short and simple" and detailed

19    instructions. AR 2158. Additionally, Mr. Neulight opined that Norris would have marked limitations

20    in the area of understanding, remembering, and applying information and that he would not expect

21    Norris's impairments to significantly improve in the absence of substance use. AR 1617, 1619. The

22    Court finds that the ALJ failed to address how this evidence affected the ALJ's finding that Norris

23    has a mild limitation in this area irrespective of substance use.

24    Accordingly, the Court finds that the ALJ erred in rejecting the medical opinions and failing

25    to address evidence of Norris's impairments to support the finding that Norris had a mild limitation

26    in this area irrespective of substance use.

### ii.    Interaction with others

28    Norris argues that the ALJ erred in finding that Norris had a mild limitation in interacting

United States District Court
Northern District of California

1    with others when not engaged in substance use. Mot. at 13. In response, the Commissioner argues

2    that the ALJ's finding is supported by substantial evidence. Opp. at 5.

3        As to this functional area, the ALJ considered that there was no reported difficulty with

4    interaction in the record when Norris stopped substance use and that Norris testified that socializing

5    causes his heart to race and he has anxiety. AR 21. The ALJ found that when Norris was not engaged

6    in substance use, he had a mild limitation in this area. AR 21.

7        The Court finds that the ALJ's finding that Norris would have a mild limitation in interacting

8    with others when not engaged in substance use is not supported by substantial evidence. The ALJ

9    explained that "[t]here is no reported violent or difficulty with interaction in the record when the

10   claimant stopped substance use." AR 21. But the medical opinions show otherwise. First, Mr.

11   Neulight opined that Norris would have a marked limitation in the area of interacting with others.

12   AR 1617. Mr. Neulight noted that he would not expect Norris's impairments to significantly

13   improve in the absence of substance use. AR 1619. Additionally, Dr. Wiebe opined that Norris had

14   marked limitations in every category of mental abilities needed to do unskilled work including:

15   getting along with others without excessive irritability, sensitivity, argumentativeness, or

16   suspiciousness; interacting appropriately with the general public; accepting instructions and

17   responding appropriately to criticism from supervisors. AR 2158. Dr. Wiebe also opined that Norris

18   "is socially alienated and would have difficulties being able to relate and communicate effectively

19   with supervisors, co-workers, and the public in a work environment." AR 2153. Dr. Wiebe further

20   opined that Norris would have difficulty maintaining a regular job even if he were able to no longer

21   use any substance in the future. AR 2154. The ALJ failed to address this evidence.

22       The ALJ also overlooked Norris's behavior when he was incarcerated. For example, on June

23   10, 2022, after Norris had been incarcerated at Santa Rita for one month, Norris was seen "acting

24   bizarrely" and deputies had to use force due to his behavior. AR 1473. The Court is also unpersuaded

25   by the Commissioner's argument that Norris presented with normal mood and affect when

26   interacting with clinicians when incarcerated. Opp. at 5 (citing AR 1424, 1458, 1468, 2174). As

27   discussed, treatments that occurred when Norris was in highly structured institutions are insufficient

28   to show improvements absent substance use. *See Clark*, 2018 WL 3659052, at *29.

United States District Court
Northern District of California

1    Accordingly, the Court finds that the ALJ erred in rejecting the medical opinion evidence

2    and failing to address evidence of Norris's impairments to support the finding that Norris had a mild

3    limitation in the area of interacting with others when not engaging in substance use.

4                        **iii.       Concentration, persisting, or maintaining pace**

5    Norris argues that the ALJ erred in finding that Norris had a moderate limitation in

6    concentrating, persisting, or maintaining pace when not engaged in substance use. Mot. at 14. In

7    response, the Commissioner argues that the ALJ's finding is supported by substantial evidence.

8    Opp. at 5-6.

9    As to this functional area, the ALJ considered Norris's testimony that he has difficulty with

10   focus and concentration when sober and that he has constant auditory hallucinations. AR 21-22. The

11   ALJ further determined that there were no reported incidents during periods when Norris was clean

12   and sober. AR 22. Specifically, the ALJ noted that in February of 2024, when Norris had been sober

13   for approximately 120 days, Norris's auditory hallucinations were not "command in nature" and

14   were described as Norris's internal thoughts. AR 22 (citing AR 2162). Based on this evidence, the

15   ALJ found that Norris had a moderate limitation in the area of concentrating, persisting, or

16   maintaining pace. AR 21-22.

17   The Court finds that the ALJ's finding is not supported by substantial evidence. Here, Mr.

18   Neulight opined that Norris would have a marked limitation in the area of concentrating, persisting,

19   or maintaining pace and that he did not expect these limitations to significantly improve in the

20   absence of substance use. AR 1618-19. Additionally, Dr. Wiebe assessed Norris when he was clean

21   and sober, AR 2140-41, and opined that Norris had marked limitations in every category of mental

22   abilities needed to do unskilled work including: maintaining focus, attention, and concentration for

23   two-hour segments; and performing at a consistent pace without an unreasonable number and length

24   of rest periods. AR 2158. Considering the medical opinions, the Court finds that substantial evidence

25   in the record does not support the determination that Norris had a moderate limitation in this area.

26   Accordingly, the Court finds that the ALJ's finding that Norris had a moderate limitation in

27   concentrating, persisting, or maintaining pace when not engaged in substance use is not supported

28   by substantial evidence.

United States District Court
Northern District of California

1

### iv.    Adapt and manage oneself

Norris argues that the ALJ erred in finding that Norris had a moderate limitation in adapting or managing oneself when not engaged in substance use. Mot. at 14-15. In response, the Commissioner argues that the ALJ's finding is supported by substantial evidence. Opp. at 6.

As to this functional area, the ALJ found that there was no reported difficulty in the record when Norris was clean and sober. AR 22. The ALJ viewed "the record in the light most favorable to the claimant" and found that Norris had a moderate limitation in this area when Norris was not engaged in substance use. AR 22.

The Court finds that the ALJ's finding is not supported by substantial evidence. Mr. Neulight opined that Norris had a marked limitation in the area of adapting or managing oneself and that he did not expect this limitation to significantly improve in the absence of substance use. AR 1618-19. Additionally, Dr. Wiebe opined that Norris had marked limitations in every category of mental abilities needed to do unskilled work including: responding appropriately to changes in a routine work setting and dealing with normal work stressors; completing a normal workday and workweek without interruptions from psychologically based symptoms; and maintaining regular attendance and being punctual within customary usually strict tolerances. AR 2158. The Court finds that the ALJ erred in finding that Norris had a moderate limitation in this functional area by failing to consider this evidence.

The Court is also not persuaded by the Commissioner's argument that the ALJ's finding is supported by the evidence that, when incarcerated, Norris had good hygiene, intact impulse control, and good judgment. Opp. at 6 (citing AR 24, 1424). As discussed, the Court finds that the ALJ failed to address reported anger and behavior incidents from Norris's incarceration. *See* AR 1473, 1471.

Accordingly, the Court finds that the ALJ's finding that Norris has a moderate limitation in this area is not supported by substantial evidence.

\*\*\*

For the above reasons, the Court finds that the ALJ's Paragraph B findings are not supported by substantive evidence.

//

1

**e. Acceptable medical sources all opined that Norris's mental illness would not**
2
**substantially improve in the absence of DAA.**

3
Norris argues that no acceptable medical opinions show that Norris's mental illness "would

4
substantially improve in the absence of DAA." Mot. at 15-16. In response, the Commissioner argues

5
that the ALJ reasonably considered the medical opinions in the record. Opp. at 11-14.

6
As discussed more in detail below, the Court finds that the ALJ erred in finding the opinions

7
from Norris's medical providers were, across the board, unpersuasive. Additionally, all of Norris's

8
medical providers opined that substance use is not material to his disability. *See* AR 1619, 2154,

9
1055, 1215, 445. While the ALJ relied on opinions from medical providers in jail and CURA in his

10
decision, AR 25, as discussed above, those opinions are from highly structured settings and the

11
regulation requires "evidence from outside such highly structured treatment settings" to demonstrate

12
that Norris's "co-occurring mental disorder(s) has improved, or would improve, with abstinence."

13
SSR 13-2p, 2013 WL 621536, at *13; *see Albert B.*, No. 5:22-CV-00865-EJD, 2023 WL 6462856,

14
at *5; *L.S.*, No. 23-CV-02862-VKD, 2025 WL 588998, at *8. Accordingly, the Court finds that the

15
ALJ's rejection of the medical opinions is not supported by clear and convincing evidence. *Longoria*

16
*v. Berryhill*, No. 1:18-CV-00409-SKO, 2019 WL 427295, at *6 (E.D. Cal. Feb. 4, 2019) ("An ALJ

17
may reject an uncontradicted opinion of a treating or examining medical professional only for 'clear

18
and convincing' reasons.").

19
                                                    ***

20
For the above reasons, the Court finds that the ALJ erred at step three of the materiality

21
analysis and in finding Norris's substance use material.

22
**2. The ALJ Erred in Evaluating the Medical Opinions from Norris's Providers.**

23
Norris argues that the ALJ erred in finding that the medical opinions of Dr. Wiebe, Dr.

24
Catlin, and Mr. Neulight were not persuasive. Mot. at 16-22. Norris argues that the ALJ substituted

25
his own lay opinion in place of the medical opinions from Norris's medical providers. *Id.* at 16.

26
Norris further argues that the ALJ failed to properly consider supportability and consistency in

27
evaluating the persuasiveness of medical evidence. *Id.* at 17-21.

28
In response, the Commissioner argues that the ALJ's evaluation of the medical opinions is

United States District Court
Northern District of California

supported by substantial evidence. Opp. at 11-14.

### a. The ALJ erred in evaluating the supportability and consistency of the medical opinions.

The ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors." 20 C.F.R. § 416.920c(a)-(c); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). The ALJ's persuasiveness explanation must be supported by substantial evidence. *See Woods*, 32 F.4th at 787.

Supportability and consistency are the two most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2); *see Woods*, 32 F.4th at 792. "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791-92 (cleaned up; quotations and citation omitted). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (cleaned up; quotations and citation omitted). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id*. § 416.920c(b)(2). However, where two or more distinct medical opinions are equally supported and consistent, the ALJ should articulate how they considered factors other than supportability and consistency, including the treatment relationship, the extent of specialization, and any other relevant factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *see also Woods*, 32 F.4th

United States District Court
Northern District of California

1    at 792 (discussing 20 C.F.R. § 404.1520c(b)(3)) ("In that case, the ALJ 'will articulate how [the

2    agency] considered the other most persuasive factors.'").

3        The record provides the opinions of three medical providers who all expressly state that

4    DAA is not material to Norris's disability. The Court addresses each opinion in turn.

### i.    Dr. Wiebe

6        On March 13, 2024, Dr. Katherine Wiebe, Ph.D., conducted a tele-video psychological

7    evaluation of Norris. AR 2131. At the evaluation, Norris reported his last use of any substance,

8    including methamphetamine, alcohol, and marijuana, was on November 8, 2023. AR 2140-41. Dr.

9    Wiebe noted that "the reliability of Mr. Norris's reporting is considered limited due to his psychiatric

10   and cognitive disorder symptoms." AR 2133.

11       Dr. Wiebe opined that "Mr. Norris has moderate to severe impairment in immediate and

12   delayed memory; and in attention/concentration/pace." AR 2153. Dr. Wiebe found that Norris had

13   "mild to moderate impairment in executive; language; and sensorimotor functioning." AR 2153. Dr.

14   Wiebe further opined that Norris had "mildly impaired overall intellectual functioning" and "his

15   psychiatrist and [p]ersonality disorder symptoms affect[ed] his cognitive functioning abilities." AR

16   2153. Additionally, Dr. Wiebe opined that Norris had marked limitations in every category of

17   "[mental abilities and aptitudes needed to do unskilled work]." AR 2158. This included marked

18   limitations in the areas of understanding, remembering, and carrying out short and simple

19   instructions; maintaining focus, attention, and concentration for two-hour segments; interacting

20   appropriately with the general public; responding appropriately to changes in a routine work setting

21   and dealing with normal work stressors; and completing a normal workday and workweek without

22   interruptions from psychologically based symptoms. AR 2158.

23       The Court finds that the ALJ has failed to expressly address the supportability and

24   consistency of Dr. Wiebe's opinion. First, the ALJ concluded Dr. Wiebe's noted limitations were

25   inconsistent with her conclusion that Norris "was markedly limited in his mental functioning." AR

26   25. But the ALJ failed to acknowledge that Dr. Wiebe explained in her report that the evaluation

27   results were valid "due to general congruency of Mr. Norris'[s] presentation, results of testing, and

28   records reviewed." AR 2133. Second, the ALJ found Dr. Wiebe's findings were contradicted by the

various reports and examinations from Norris's incarceration that showed "consistent improvement" in Norris's mental condition when clean and sober. AR 25. As discussed above, the ALJ's DAA materiality determination is based on selected mental status examinations from Norris's incarceration in highly structured settings. The DAA materiality determination requires "evidence from *outside of such highly structured treatment settings* demonstrating that the claimant's cooccurring mental disorder(s) has improved, or would improve, *with abstinence.*" SSR 13-2p, 2013 WL 621536, at *13 (emphasis added). To the extent the ALJ found Dr. Wiebe's opinion is unpersuasive because her opinion was solicited from an attorney referral, AR 25, the Court finds that it "is not a legitimate basis on which to discount" Dr. Wiebe's opinion. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (finding discounting a medical opinion on the basis that the opinion was provided at the request of the claimant's attorney is not "legitimate").

Accordingly, for all the above reasons, the Court finds the ALJ erred in finding Dr. Wiebe's opinion unpersuasive.

### ii.    Mr. Neulight

Mr. Ari Neulight, LCSW, evaluated Norris on November 8, 2023. AR 1620. Mr. Neulight noted he worked with Norris on and off for over five years. AR 1615. Mr. Neulight opined that Norris has marked limitations in: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. AR 1617-18. Mr. Neulight noted that Norris has repeated history of decompensation and "has struggled in settings without lots of structure to follow through on appointments, [and medication] compliance." AR 1619. Additionally, Mr. Neulight opined that Norris's impairments would not be expected to significantly improve in the absence of substance use. AR 1619. Mr. Neulight noted that Norris has a "long history of substance use to cope with long-standing trauma, anxiety, and depression." AR 1619. Mr. Nuelight also opined that Norris would be absent from work four or more days per month and would be off-task more than 30% of the time. AR 1619-20. Mr. Neulight noted that Norris's symptoms and limitations cause him to have difficulty with attending appointments, regularly taking medications, and consistently engaging with treatment. AR 1620. Mr. Neulight opined that the intensity, persistence, and limiting effects of

Norris was not expected to fluctuate over time. *Id.*

The Court finds that the ALJ has failed to expressly address the supportability and consistency of Mr. Neulight's opinion. First, the ALJ found that Mr. Neulight's report was not persuasive because he failed to address the impact of Norris's polysubstance use and its effects on his mental functioning. AR 25. But the records shows that Mr. Neulight considered Norris's substance use in his report. *See* AR 1619. Additionally, the ALJ found that Mr. Neulight, a social worker, lacked the medical expertise to opine on Norris's medical issue. AR 25. But Mr. Neulight had worked with Norris "on [and] off, at times intensively for over 5 years." AR 1615. Mr. Neulight observed that Norris had symptoms consistent with depression, anxiety, complex trauma and PTSD. AR 1615. Considering the relationship between Mr. Neulight and Norris and Mr. Neulight's observation, the Court finds that the ALJ has not provided legally sufficient reasons to reject Mr. Neulight's opinion.

Accordingly, for all the above reasons, the Court finds the ALJ erred in finding Dr. Neulight's opinion unpersuasive.

### iii.    Dr. Catlin

On November 12, 2021, Dr. Laura Catlin, Psy.D., completed a psychological disability evaluation of Norris over the phone. AR 440-41. The evaluation took place after Norris "was recently released from a residential mental health facility . . . after having a psychotic break." AR 444. Dr. Catlin noted that Norris was "difficult to evaluate as he was unable to provide much information," and was vague when answering questions about himself. AR 444. Dr. Catlin opined that Norris's "attention, concentration, and memory all seem to be impaired." AR 444.

The ALJ found Dr. Catlin's report not persuasive because "Dr. Catlin herself noted the claimant was an unreliable historian." AR 25. The ALJ also emphasized that Dr. Catlin's examination was solicitated through attorney referral for "generating supportive evidence." AR 25.

The Court finds that the ALJ has failed to expressly address the supportability and consistency of Dr. Catlin's opinion. The Court notes that the ALJ erred by finding Dr. Catlin's opinion "not persuasive" because her objective finding that Norris "was an unreliable historian" did not support her conclusion, yet the ALJ's Paragraph B findings mostly align with that of Dr. Catlin's

opinion when Norris was using substances. *See* AR 21-22, 25, 444. Additionally, the Court finds that the ALJ has failed to address the supportability and credibility of Dr. Catlin's opinion when she found Norris "was very difficult to evaluate" and Norris's "substance use clouds the diagnostic picture." AR 444-45. To the extent the ALJ found Dr. Catlin's opinion is unpersuasive because her opinion was solicited from an attorney referral, AR 25, the Court finds that it "is not a legitimate basis on which to discount" Dr. Catlin's opinion. *See Nguyen*, 100 F.3d at 1464.

Accordingly, for all the above reasons, the Court finds the ALJ erred in finding Dr. Catlin's opinion unpersuasive.

***

For the above reasons, the Court finds that the ALJ erred in evaluating the medical opinions provided by Dr. Wiebe, Mr. Neulight, and Dr. Catlin because the ALJ failed to expressly address the supportability and consistency of those opinions. *Woods*, 32 F.4th at 792. While the Court recognizes that it must defer to the ALJ where there are alternative and reasonable interpretations of the evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision."). Nonetheless, the ALJ here erred in rejecting the medical opinions in the record without providing adequate explanation as required by the regulation. *Woods*, 32 F.4th at 792.

### b.  The ALJ erred in substituting his own lay opinion in place of the medical opinions for the RFC findings.

Norris argues that the ALJ erred in finding the opinions of all providers unpersuasive as to Norris's disability when he was abstinent. Mot. at 16. Norris argues that the ALJ erred in constructing a residual functional capacity ("RFC") assessment of a "hypothetically sober Plaintiff" and relying on the RFC assessment in the ALJ's questions to the vocational expert. *Id.* at 16-17 (citing AR 26, 57). In response, the Commissioner argues that the ALJ reasonably rejected medical opinions that he found unpersuasive in his RFC findings. Opp. at 14-15.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2)

clinical findings that support the opinions. *See Longoria v. Berryhill*, No. 1:18-CV-00409-SKO, 2019 WL 427295, at *6 (E.D. Cal. Feb. 4, 2019). An ALJ cannot reject a medical opinion "as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

The Court finds that the ALJ erred in advancing his own opinion to conclude that DAA is material by relying solely on records and examinations when Norris was in highly structured settings. As discussed above, the ALJ cannot base his findings only on evidence of improvement in highly structured settings because the improvement "may be due at least in part to treatment for the co-occurring mental disorder, not entirely the cessation of substance use." SSR 13-2p, 2013 WL 621536, at *12. Additionally, the ALJ erred in finding none of the opinions from Norris's medical providers persuasive. Thus, Court finds that the ALJ's rejection of the medical opinions is not based on "clear and convincing" evidence. *Longoria*, 2019 WL 427295, at *6.

After the ALJ rejected the medical opinions in the record, the ALJ made RFC findings based on his interpretation of the record. AR 22-25. The Court finds that the ALJ impermissibly substituted his own medical judgment for that of the medical opinions from Norris's providers. *See Tacket v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (explaining that an ALJ "cannot arbitrarily substitute his or her own judgment for competent medical opinion," and must not "succumb to the temptation to play doctor and make [his or her] own independent medical findings"). The Court finds that the ALJ erred in effectively ignoring the medical opinions from Dr. Wiebe, Mr. Neulight, and Dr. Catlin in his RFC finding.

### 3. The ALJ's "Paragraph C" Findings Are Not Supported by Substantial Evidence.

Norris argues that the ALJ's determination that the ALJ's "Paragraph C" criteria findings are not supported by substantive evidence because the ALJ provides no explanation in support of his findings. Mot. at 22.

In response, the Commissioner argues that the ALJ "accurately pointed out that the record did not show any of [the] requisite elements [under Paragraph C] during periods of sobriety." Opp. at 6-7 (citing AR 22, 24). The Commissioner argues that Plaintiff "merely disagrees with the ALJ's

interpretation of the evidence." Opp. at 7.

In his decision, the ALJ considered the "Paragraph C" criteria and found the criteria was not met if Norris "stopped substance use." AR 22. The Court notes that the ALJ failed to provide any explanation as to his conclusion. *See* SSR 13-2p, 2013 WL 621536, at *4 (stating that "[i]f the claimant has [an] ... impairment[ ] that results in disability and DAA is not causing or does not affect the other impairment[ ] to the point where the other impairment[ ] could be found nondisabling in the absence of DAA, DAA is not material to the determination of disability."). The ALJ's failure to provide that explanation leaves the Court "[un]able to understand the basis for the materiality finding and the determination of whether the [Plaintiff] is disabled." SSR 13-2p(b), 2013 WL 621536, at *2. The Court finds that the ALJ's failure to provide an explanation for the "paragraph C" analysis was erroneous under SSR 13-2p. *Albert B. v. Kijakazi*, No. 5:22-CV-00865-EJD, 2023 WL 6462856, at *4 (N.D. Cal. Sept. 29, 2023) (holding the ALJ's failure to provide a sufficient explanation for his DAA materiality determination was an error under SSR 13-2p). Accordingly, the Court need not reach Norris's remaining arguments as to the ALJ's "Paragraph C" analysis.

The Court hereby VACATES the ALJ's determination that Norris failed to satisfy the "Paragraph C" criteria absent substance use, and REMANDS for further proceedings.

### 4.  The ALJ Erred in Rejecting Norris's Symptom Testimony.

Norris argues that the ALJ erred in finding Norris's statements were inconsistent and failed to provide clear and convincing reasons for rejecting his testimony. Mot. at 23. Norris argues that his testimony is consistent with the medical opinions and that the ALJ incorrectly rejected the testimony in light of the jail records. *Id.* at 23-24. In response, the Commissioner argues that the ALJ reasonably found that the Norris's statements concerning his symptoms was not consistent with the record evidence. Opp. at 8.

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v.*

United States District Court
Northern District of California

1    *Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, "the claimant 'must produce objective medical

2    evidence of an underlying impairment' or impairments that could reasonably be expected to produce

3    some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting

4    *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). Second, if the claimant does so and there

5    is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony as to the

6    severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'"

7    *Tommasetti*, 533 F.3d at 1309 (quoting Smolen, 80 F.3d at 1281); *see also Garrison*, 759 F.3d at

8    1014.

9        The ALJ's reasons for discounting Norris's symptom testimony do not comport with the

10    "clear and convincing" standard. The ALJ found Norris's statements about "the intensity,

11    persistence, and limiting effects" of his impairments were "inconsistent" with the evidence that

12    Norris's mental symptoms greatly diminished when he was clean and sober. AR 23. But, as

13    discussed above, the ALJ's improperly relied on selected mental health evaluations from highly

14    structured settings, and the evidence is insufficient to support the ALJ's materiality findings. The

15    ALJ also improperly found the medical opinions unpersuasive. Here, Norris testified that he had

16    mental breakdowns and behaved erratically when he was hospitalized and incarcerated. *See e.g.,*

17    AR 49. The Court finds that Norris's testimony is consistent with the medical opinions from Dr.

18    Wiebe, Mr. Neulight, Ms. Adeniji and SAGE that Norris's substance use is not material to his

19    impairments. *See* AR 1055, 1215, 1619, 2154. Indeed, the Court notes that the ALJ did not expressly

20    address Ms. Adeniji and SAGE's opinions in his decision. *See* AR 22-25. Accordingly, the ALJ

21    erred in rejecting Norris's testimony without providing specific, clear, or convincing reasons to do

22    so.

23        **C. Remedy**

24        In reviewing a commissioner's decision, a court may remand the case "either for additional

25    evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

26    When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to

27    remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d

28    587, 595 (9th Cir. 2004) (citations omitted). The Court should remand for an immediate reward of

United States District Court
Northern District of California

United States District Court
Northern District of California

benefits "if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* at 593 (citing *Harman v. Apfel*, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000)).

Here, as to step one of the *Harman* test, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinion evidence. As to step two of the *Harman* test, as discussed above, the ALJ failed to make adequate findings in denying Norris's requested benefits, and the record shows "serious doubt" as to whether Norris was "in fact disabled" absent DAA. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). As to the step three of the *Harman* test, the Court cannot conclude that the ALJ would be required to find Norris disabled if the ALJ properly credited the evidence. Thus, because the record is "uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). Because "additional proceedings can remedy defects in the original administrative proceedings," this case is remanded to the ALJ for further consideration." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Norris's motion for summary judgment is GRANTED.  The Court hereby VACATES the Commissioner's decision denying benefits and REMANDS this action for further administrative proceedings consistent with this order.

Dated:  August 14, 2025

_____
BETH LABSON FREEMAN
United States District Judge